**THE LAW OFFICE OF ROBERT L. STARR**
Robert L. Starr, State Bar No. 183052
robert@starrlaw.com
23901 Calabasas Road, Suite 2072
Calabasas, CA 91302
Voice: 818-225-9040
Facsimile: 818-225-9042

Attorneys for Plaintiff Kristal Regueiro
and others similarly situated

ADDITIONAL COUNSEL LISTED ON NEXT PAGE

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTAL REGUEIRO, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>FCA US, LLC,<br><br>Defendant. | Case No.<br><br>**<u>CLASS ACTION</u>**<br><br>**COMPLAINT FOR:**<br><br>**VIOLATIONS OF BUSINESS AND PROFESSIONS CODE SECTION 17200,** *et seq.* |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**POMERANTZ LLP**
Jordan L. Lurie, State Bar No. 130013
jllurie@pomlaw.com
Ari Y. Basser, State Bar No. 272618
abasser@pomlaw.com
1100 Glendon Avenue
15th Floor Los Angeles, CA 90024
Telephone: (310) 432-8492

Manny Starr (319778)
manny@frontierlawcenter.com
Adam Rose (210880)
adam@frontierlawcenter.com
**Frontier Law Center**
23901 Calabasas Road, #2074
Calabasas, CA 91302
Telephone: (818) 914-3433
Facsimile: (818) 914-3433

Additional Attorneys for Plaintiff
Kristal Regueiro and others similarly situated

Plaintiff Kristal Regueiro ("Plaintiff" or "Regueiro"), individually and on behalf of all other California citizens similarly situated, brings this action against Defendant FCA US, LLC ("Defendant" or "FCA"), upon information and belief, except as to her own actions, the investigation of her counsel, and the facts that are a matter of public record, and alleges as follows:

## INTRODUCTION

1.     This matter arises from Defendant FCA's unlawful failure to tender a statutorily compliant California Emissions Warranty for the vehicles that FCA distributes in the state of California.

2.     In 1990, the California Air Resource Board ("CARB") submitted, and the Legislature adopted, California Code of Regulation §§ 2035, *et seq*., which, requires all vehicle manufacturers to ensure that any new motor vehicle sold in California is accompanied by a "statutorily compliant" general emissions warranty. ("California Emissions Warranty")

3.     In order to be "statutorily compliant," the emissions warranty must provide coverage for defects "which cause the failure of a warranted part [or] which would cause the vehicle's on-board diagnostic malfunction indicator light to illuminate, for a period of three years or 50,000 miles, whichever occurs first[.]" [13 CCR § 2037(b)(2)].

4.     A "warranted part" is defined as any part installed by a manufacturer "which affects any regulated emission from a motor vehicle or engine[.]" [13 CCR § 2035(c)(2)(B)].

5.     When the part is considered to be a "high-priced" warranted part, the manufacturer must extend the emissions warranty from three years/50,000-miles, to 7-years or 70,000-miles. [13 CCR § 2037(b)(3)].

6.     In an effort by FCA to minimize its warranty exposure, FCA unilaterally and unlawfully limited the parts that are covered under FCA's application of the California Emissions Warranty, and when these parts are

CLASS ACTION COMPLAINT

defective, instead of covering the parts and related repairs under the California Emissions Warranty, FCA refuses to cover the parts under the California Emissions Warranty, harming its customers.

7.     Relevant to this case is the valve train system, which includes, but is not limited to, intake valves, exhaust valves, valve guides, valves springs, valve seats, and camshafts ("Valve Train System") on vehicles distributed by FCA in California under the FCA brand name ("Class Vehicles"). As set forth herein, the Valve Train Systems in Class Vehicles are high-priced, emissions related parts which should have been covered for 7-years or 70,000-miles pursuant to the California Emissions Warranty requirements.

8.     As will be detailed further below, the California Air Resources Board determined that defects which cause illumination of the MIL are covered under the 7-years or 70,000-miles California Emissions Warranty for high-priced emissions related parts. This is because, pursuant to Title 13, Section 1968.2, the MIL is not supposed to illuminate unless the vehicle's onboard diagnostic system ("OBDII" or "OBD2") has detected a defect which increased regulated emissions.

9.     Furthermore, defects which cause illumination of the MIL would result in the vehicle failing a California smog check. Thus, defects which cause a vehicle to fail a California smog check also increase regulated emissions.

10.    Valve Train System defects in Class Vehicles increase regulated emissions, cause the MIL to illuminate, and cause the vehicle to fail a California smog check.

11.    Thus, Valve Train Systems in Class Vehicles are "warranted parts".

12.    As alleged in greater detail below, not only are the Valve Train Systems in Class Vehicles "warranted parts," but they are "high-priced" warranted parts whose repair or replacement is covered under the California Emissions Warranty for 7-years or 70,000-miless.

13.    Yet, in an effort to minimize its warranty costs, FCA has unilaterally,

wrongfully, and unlawfully excluded many parts, including but not limited to the Valve Train System, from being covered under FCA's emissions warranty as "emissions-related" parts, "warranted parts", and "high-priced" warranted parts. On information and belief, FCA has never treated the Valve Train System as "emissions-related" parts, has never treated the Valve Train System as "warranted parts", and has never treated the Valve Train System as "high-priced" warranted parts. As a result, Class Members, including Plaintiff, have wrongfully been denied warranty coverage.

14.     As a result of FCA's systematic refusal to provide the proper emissions warranty coverage, FCA wrongfully required Plaintiff, and other Class Members, to pay out-of-pocket for repairs which should have been conducted free of charge under the 7-years or 70,000-miles emissions warranty.

15.     Further, as alleged below, by failing to cover the Valve Train System under the California Emissions Warranty, FCA also failed to provide a fully compliant California Emissions Warranty for all Class Vehicles at the time of sale, resulting in Class members overpaying for their vehicles.

16.     Plaintiff, on behalf of herself and all others similarly situated, seeks redress for FCA's violations of California law based on the causes of action set forth below. In addition, Plaintiff seeks an order, enjoining FCA's conduct; declaring that FCA's current and past practices as alleged herein do not comply with the CCRs and with the California Emissions Warranty laws; directing it to inform Class Members that repair and/or replacement of the Valve Train System is covered under the 7-year or 70,000-miles emissions warranty; directing FCA to provide warranty coverage for the repair and replacement of defective Class Vehicle Valve Train Systems during the first 7-years or 70,000 miles of vehicle service; and for restitution relating to FCA's failure to provide a compliant California Emissions Warranty.

///

CLASS ACTION COMPLAINT

**BACKGROUND**

1

2      17.    In order to understand the widespread effect of FCA's unlawful

3 conduct, it is important to identify the statutory provisions at issue.

4      18.    In September 1990, and pursuant to its broad authority to regulate

5 and reduce vehicle emissions under Health and Safety Code §§ 43013(a) and

6 43205, CARB submitted, and the Legislature adopted, California Code of

7 Regulations ("CCR") §§ 2035, *et seq*., otherwise known as the "Emission Control

8 System Warranty Requirements for 1990 and Subsequent Model Year Passenger

9 Cars, Light-Trucks, and Medium-Duty Vehicles."

10      19.    The Regulations require manufacturers to provide warranty coverage

11 for defects relating to "warranted parts." As defined by the Regulations, a

12 "warranted part" includes any part whose malfunction is required to, or can, cause

13 the vehicle's Malfunction Indicator Light ("MIL") to illuminate—even though the

14 primary function of the defective component is not directly related to emissions

15 control. 13 CCR § 2035(c)(2)(B).

16      20.    The MIL is a light located on the driver's side instrument panel that,

17 when illuminated, is amber in color and displays either a "Check

18 Engine/Powertrain" message; a "Service Engine/Powertrain Soon" message; or

19 the International Standards Organization's "engine symbol."

20      21.    The MIL illuminates to notify the driver of detected malfunctions in

21 the vehicle's on-board diagnostic emission systems. In layman's terms, this means

22 that when the MIL is illuminated, an emissions-related defect has been detected in

23 the vehicle.

24      22.    One type of "warranted part" is an emissions-related part. An

25 "emissions-related part" is defined in 13 CCR § 1900(b)(3) as any automotive part

26 which affects any regulated emission from a motor vehicle which is subject to

27 California or federal emission standards. This includes, at a minimum, those parts

28 identified in the "Emissions-Related Parts List," adopted by CARB on November

1    4, 1977, as last amended June 1, 1990.

2        23.    Any defect which "cause[s] the failure of a warranted part [or] which

3    would cause the vehicle's on-board diagnostic malfunction indicator light to

4    illuminate" is entitled, by statute, to warranty coverage "for a period of 3-years or

5    50,000 miles, whichever occurs first[.]" 13 CCR § 2037(b)(2).

6        24.    As will be further detailed below, the Valve Train Systems in Class

7    Vehicles are "warranted parts" and "emissions-related parts" because its failure

8    causes the MIL to illuminate, and its failure increases regulated emissions.

9        25.    As set forth above, repair or replacement of any emissions-related

10    components are generally covered by a California statutory 3-years or 50,000-

11    miles emission warranty. However, if these emissions-related parts are determined

12    to be "high-priced," then 13 CCR § 2037(c)(3) requires that the warranty coverage

13    be extended from 3-years or 50,000 miles, to 7-years or 70,000 miles.

14        26.    A "high-priced warranted part" is defined as a warranted part whose

15    individual replacement cost at the time of certification exceeds the cost limit

16    established by the annual average nationwide urban Consumer Price Index

17    ("CPI") for the calendar year two years prior to the model-year for which the cost

18    limit is being calculated. [13 CCR § 2037(c)(3)]. Thus, to determine the cost limit

19    for a high-priced warranted part in 2018, the calculation would need to utilize the

20    annual average nationwide urban CPI for 2016.

21        27.    In calculating whether a particular part's individual replacement cost

22    at the time of certification exceeds the cost limit, "the replacement cost shall be

23    the retail cost to a vehicle owner and include the cost of the part, labor, and

24    standard diagnosis." 13 CCR § 2037(c)(1). This calculation must utilize a price-

25    point as would be charged "in the highest-cost metropolitan area of California." 13

26    CCR § 2037(c)(2).

27        28.    This cost limit shall be calculated using the following equation:

28    $$\text{Cost limit}_n = \$300 \times (\text{CPI}_{n-2} / 118.3)$$

29.     Cost limit$_n$ is the cost limit for the applicable model year of the
vehicle rounded to the nearest ten dollars.

30.     If, upon conducting this calculation, the price of replacement exceeds
the CPI cost limit, the part is a "high-priced" warranted part, and the manufacturer
is statutorily required to extend warranty coverage for the part's repair or
replacement from 3-years or 50,000 miles, to 7-years or 70,000 miles. 13 CCR §
2037(b)(3).

31.     Upon information and belief, when using the methodology required
by the California Code of Regulations to calculate the cost of replacing the Valve
Train System, the cost is always *greater* than $1,000.00. This is because, on
information and belief, the number of Labor hours required to replace the Valve
Train System exceeds 10 hours, and the average labor hour rate exceeds $100.
However, the high-price cost limit has *never exceeded* $1,000. Thus, the cost of
replacing the Valve Train Systems installed in Class Vehicles always exceeds the
cost limit, and the Valve Train System in Class Vehicles is therefore a "high-
priced" part.

32.     Because the Valve Train Systems in Class Vehicles are "high-priced"
warranted parts as defined by 13 CCR § 2037(c)(1), its repair or replacement
should have been covered by the 7-years or 70,000 miles California Emissions
Warranty but wasn't.

33.     While this action focuses on the Valve Train System specifically,
Plaintiff also alleges that FCA has been using the wrong standard generally to
determine if an emissions part, such as the Valve Train System, is a warranted part
and is "emissions-related," as detailed below.  FCA also systemically has been
using the wrong standard for calculating the retail labor cost in determining
whether a part is a "high-priced part" under the California Code of Regulations.
Instead of using the retail labor cost *i.e.*, the number of labor hours that the
*customer pays* for the repair ("customer pay"), FCA uses, and has always used, the

number of hours that the *manufacturer pays its dealers to perform the repairs under warranty* ("warranty pay"), which is a lesser amount.  As a result, FCA is grossly understating the parts that are designated as high-priced warranted parts under the CCR, including the Valve Train System.

## JURISDICTION AND VENUE

34.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because: (i) members of the Class are citizens of a state different from that of FCA; and (ii) aggregating the claims of individual Class members, the total matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs. Further, 28 U.S.C. § 1332(d)(5) does not apply because (i) FCA is not a state, state official, or other governmental entity against whom the Court may be foreclosed from ordering relief, and (ii) the number of members of the Class in the aggregate exceeds 100.

35.     This Court has personal jurisdiction over FCA because FCA has sufficient minimum contacts with California, having intentionally availed itself of the California market so as to render the exercise of jurisdiction over it by this District Court consistent with traditional notions of fair play and substantial justice.

36.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because FCA conducts business within the State of California, has failed to designate with the office of the California Secretary of State a principal place of business in California, and a substantial part of the events giving rise to the claims alleged herein occurred in this District.

## PARTIES

37.     Plaintiff Kristal Regueiro is, and at all times relevant hereto has been, an individual. At all times relevant, Plaintiff resided in Los Angeles County, California.  The repairs that give rise to this action were made to Regueiro's vehicle in Los Angeles County, California.

CLASS ACTION COMPLAINT

38.    Defendant FCA was and is, a Delaware corporation, headquartered in Michigan, doing business in the State of California. FCA sells Vehicles, including the Class Vehicles, in the State of California.

39.    Plaintiff reserves the right to expand, limit, modify, or amend these allegations at any time, based upon, changing circumstances and/or new facts obtained during discovery.

## SUBSTANTIVE ALLEGATIONS

40.    Regueiro purchased and is the owner of a 2015 Jeep Wrangler, VIN 1C4AJWBG5FL665112 ("Subject Vehicle"). The Subject Vehicle was purchased by Regueiro in the state of California and registered in the state of California.

41.    On November 17, 2021, at 54,041 miles, the Subject Vehicle was presented for repairs to Champion Chrysler Jeep Dodge Ram ("Champion"), located at 9655 Firestone Blvd. Downey, CA 90241. Champion is an FCA authorized repair facility.

42.    Regueiro complained that the Subject Vehicle's "CHECK ENGINE LIGHT COMES ON AND OFF".

43.    A diagnostic scan of the vehicle by the repair facility found that the P0303 OBDII fault code was triggered. The P0303 OBDII fault code indicates a Cylinder 3 misfire, which is a condition that causes an increase in regulated emissions.

44.    The repair facility recommended a "TEAR DOWN" to correct the issue and indicated that the repair would not be covered under warranty.

45.    Plaintiff denied the repair and paid a $210.00 diagnostic fee out of pocket.

46.    FCA refused to cover the cost of the repair under the California Emissions Warranty, even though the defect increased regulated emissions, the Valve Train System is a high-priced part, the vehicle had been in service less than 7-years, and the vehicle had been driven less than 70,000-miles.

47.     The entire cost of the diagnosis and repairs relating to the Valve Train System should have been covered and paid for by FCA under the 7-year or 70,000-miles California Emissions Warranty. This is because, pursuant to 13 CCR § 2037(c), the Valve Train System should have been identified as a high-priced emissions-related part, and the parts relating to that repair should have been covered under the California Emissions Warranty pursuant to under regulation 2037(c).

48.     FCA's failure to classify the Valve Train System in Class Vehicles as a covered part under the California Emissions Warranty was an omission by FCA designed to limit its warranty exposure.

49.     Plaintiff's experience is just one of many examples of FCA's scheme to avoid providing a true and comprehensive list of all parts which should be covered under either a 3-year or 50,000 mile or 7-years or 70,000-miles California Emission Warranty.

50.     The details of how FCA actually applied the CCR and the CCR cost limit formula with respect to the Valve Train Systems in Class Vehicles are exclusively within FCA's possession— as is the information regarding what other parts FCA improperly omitted from its list of parts entitled to coverage under the California Emissions Warranty.

51.     Plaintiff presented the Subject Vehicle to an FCA authorized repair facility for repairs prior to the end of the 7-years or 70,000-miles California Emissions Warranty period for high-priced emissions parts. Instead of conducting these repairs under warranty as required by the regulations, FCA unlawfully denied warranty coverage for the Valve Train System—a "high-priced" emission part which should have been covered under the 7-years or 70,000-miles California Emissions Warranty.

52.     The reason that Plaintiff was charged for the repairs was not the result of an individual oversight by Champion in failing to identify the repairs as

CLASS ACTION COMPLAINT

being covered under the 7-years or 70,000-miles California Emissions Warranty. Instead, Plaintiff was denied warranty coverage because FCA, in a systematic and organized attempt to increase profit, omitted from warranty booklets and internal dealership literature, parts which should have been identified as "emissions-related", "warranted parts" and as "high-priced" warranted parts entitled to extended statutory coverage.

53.    Pursuant to 13 CCR § 2037(c)(1)(B), FCA is required to identify "high-priced warranted parts…which have an individual replacement cost at the time of certification exceeding the cost limit defined in section (c)(3)."

54.    FCA intentionally failed to identify all these components in order to increase profit vis-à-vis reducing the amount of money it spends on warranty-related repairs.

55.    If FCA complied with California law and properly identified all the parts which should have been identified as "high priced," then FCA dealerships would properly provide warranty coverage for high-priced warranted parts, and Plaintiff would never have paid out-of-pocket for repairs which were covered under warranty.

56.    In addition, FCA's failure to provide a comprehensive California Emissions Warranty that covered the Valve Train System resulted in Plaintiff and the Class overpaying for their vehicles. In essence, Class Members paid for vehicles that purported to cover all required parts, including the Valve Train System, pursuant to the California Emissions Warranty, but did not. FCA's refusal to include in its written warranty booklets coverage for the Valve Train System in Class Vehicles under the California Emissions Warranty resulted in FCA's unjust enrichment and detriment to Plaintiff and the Class. This is because Class Members were supposed to be provided with warranty coverage which complied with FCA's California Emissions Warranty obligations. A compliant warranty has a value to Class Members and has a cost to FCA. Instead of FCA providing a

compliant warranty, FCA has provided a deficient warranty which does not cover the Valve Train System under the California Emissions Warranty, which FCA is lawfully obligated to cover. The non-compliant warranty provides less coverage and thus exposes Class Members to more financial risk and is less valuable to Class Members. Similarly, the non-compliant warranty costs FCA less money, because it exposes FCA to less risk and will result in FCA paying out less in warranty claims.

57.    Class Members were entitled to a compliant California Emissions Warranty but were provided with a deficient warranty. As a result, FCA has been unjustly enriched by providing a deficient warranty which reduced FCA's costs, and Class Members have been damaged by not receiving the warranty that they were legally entitled to receive.

58.    In fact, irrespective of whether a Class Member's Class Vehicle underwent a repair to the Valve Train System, Class Members were sold cars which were worth less than what Class Members actually paid for, by virtue of FCA's systematic failure to provide a warranty that covered the Valve Train System under the California Emissions Warranty.

59.    FCA's conduct violates the Unfair Competition Law , California Business and Professions Code section 17200, et seq. (the "UCL").

60.    Plaintiff and other members of the Class have suffered damage as a result of FCA's wrongful conduct as alleged herein and therefore have standing.

## CARB DECLARATON

61.    CARB has provided a Declaration from Allen Lyons, who, at the time the Declaration was made, was the Chief of the Emissions Certification and Compliance Division of CARB regarding the California Emissions Warranty. The Declaration (hereinafter, the "CARB Declaration") was made "for the sole purpose of educating the Courts about CARB's interpretation and implementation of California's warranty requirements." The CARB Declaration sets forth CARB's

interpretation of certain of the foregoing CCR provisions, including how to define a "warranted part" and a "high-priced" warranted part for purposes of the California Emissions Warranty.

62. The CARB Declaration states, in relevant part, that "warranted parts" under the California Emissions Warranty "include any components that can or are required to illuminate the OBD Malfunction Indicator Light (MIL) in the event of a malfunction, even if the primary function of the component is not emission control, within the warranty period. (Cal. Code Regs., tit. 13, § 2037, subd. (b)(2).) The MIL is a light located on the driver's side instrument panel that, when illuminated, is amber in color and displays "Check Engine/Powertrain," "Service Engine/Powertrain Soon," or the International Standards Organization (ISO) engine symbol; the MIL illuminates to notify the driver of detected malfunctions of OBD-monitored emissions systems on the vehicle. (Cal. Code Regs., tit. 13, § 1968.2, subds. (a), (d)(2.1.1) & (2.2.).)"

63. The CARB Declaration also clarifies the standard for determining whether a warranted part is emissions-related. According to CARB, as set forth above, any vehicle part that causes the MIL to illuminate and/or affects regulated emissions is an emissions-related part under the California Emissions Warranty law. This is not the standard that FCA has been using.

64. The CARB Declaration further provides that "When calculating the cost of labor portion of the replacement cost equation, in order to determine if a part is a "high-priced" warranted part for the purposes of California Code of Regulations, title 13, section 2037, subdivision (c), manufacturers first calculate the amount of time it would take to diagnose and repair or replace the part (the labor hours). A dollar amount is then attributed to the number of labor hours to come up with a cost of labor for each part. In doing this, manufacturers should use the labor hours and associated costs that would be charged to consumers to perform any required diagnosis and repairs to or replacement of the part, not the

labor hours that manufacturers' service dealerships are allowed to charge manufacturers."

65.    Thus, based on the CARB Declaration, FCA is required to provide 7-years or 70,000-miles warranty coverage for all components whose failure affects any regulated emission and can or are required to illuminate the MIL, even if the primary function of the component is not emissions control, and which are considered high-priced based on the amount a consumer would pay for the parts and labor associated with a defective component's diagnosis and replacement.

66.    Although the Valve Train System in Class Vehicles affects regulated emissions and is considered a high-priced emissions related part, as further set forth below, FCA, as a matter of custom and practice, has failed to cover the Valve Train System in Class Vehicles for 7-years or 70,000-miles as required by the CCR.

**THE VALVE TRAIN SYSTEM AND ITS COMPNENTS ARE EMISSIONS-RELATED PARTS**

67.    A part is considered a "warranted part" under California Code of Regulations Section 2035 if the part affects regulated emissions.

68.    The Valve Train System in Class Vehicles effects regulated emissions because, with regard to internal combustion engines such as the engines installed in the Class Vehicles, the Valve Train System is used as a pathway to insert gasoline and air, in a very precise mixture, into the combustion chamber. The Valve Train System is also used to evacuate exhaust from the combustion chamber. In order for the engines installed in the Class Vehicles to perform properly, the combustion chamber has to be a sealed environment. A properly functioning Valve Train System is essential to ensuring that the combustion chamber is a sealed environment. When the Valve Train System is defective, causing any exhaust or intake valve to leak, the combustion chamber is no longer sealed, increasing regulated emissions.

69.    A piston as used inside an internal combustion gasoline engine is a lubricated sliding shaft that fits tightly inside a combustion chamber. The piston's purpose is to compress a gasoline-air mixture, then when the compressed gasoline-air mixture is compressed, it is ignited by a spark generated from a spark plug, creating a small explosion. When the small explosion occurs, the piston's purpose is to transfer the force generated by the small explosion into energy. The transfer of energy occurs because downward pressure is placed on the piston from the explosion. The piston is connected by a connecting rod to a crankshaft. When the small explosion occurs, the piston is forced in a downward motion, turning the crankshaft in a spinning motion. The spinning motion is ultimately transferred through the transmission, driveshaft and axles, to the wheels of a vehicle, causing forward and reverse vehicle motion. Modern internal combustion vehicle engines usually have between 4 and 8 pistons, depending on engine and vehicle size. All of the engine's pistons work in harmony with each other and are connected to the crankshaft.

70.    In order for the piston to be able to compress the gasoline-air mixture, the piston and combustion chamber must be a sealed environment, so that when the piston slides up, no gasoline or air leaks outside of the combustion chamber, causing the gasoline and air to compress. If any gasoline or air leak outside of the combustion chamber, the gasoline and air that does ignite inside the combustion chamber is not the intended quantity of gasoline and air, and because the pounds per square inch of compression is not as intended, the small explosion that is generated is not as powerful as it would otherwise be, again increasing regulated emissions. Finally, the aforementioned leaking that occurs if the piston and combustion chamber are not a sealed environment may also cause engine misfire, which increases regulated emissions.

71.    Similarly, if the piston and combustion chamber are not a sealed environment, when the gasoline and air ignite, creating the small explosion inside

CLASS ACTION COMPLAINT

the combustion chamber, some of the pressure generated by the small explosion leaks. The leaked pressure reduces the amount of force being applied to the piston. This reduces the velocity of the piston's downward motion, wasting the power that is generated, and increasing regulated emissions.

72.     Intake and exhaust valves are part of the combustion chamber. The intake and exhaust valves, which collectively make up the Valve Train System, open and close to either insert gasoline and air, or remove exhaust. When an intake valve is not open, performing its function as stated herein, in order for an engine to run properly, the valve must be closed and not leak. If an intake or exhaust valve is defective and leaking, the leaking will result in the combustion chamber no longer being a sealed environment, resulting in an increase in regulated emissions. As a result, CARB regards the Valve Train System and its components as emissions-related parts.

73.     Specifically, as stated herein, on June 1, 1990, CARB published a document entitled "Emissions-Related Parts List" which specifically identifies the Valve Train System and its components as emissions-related parts.

74.     FCA's own documents, including FCA's OBDII summaries discussed below submitted to CARB as part of the vehicle certification process, identify the specific fault codes relating to the Valve Train System that directly correlate with increased emissions and confirm an emissions-related defect. Also, as confirmed by the FCA's OBDII summaries, these fault codes cause the OBDII MIL to be illuminated. The fault codes identified in FCA's OBDII summaries confirm that there is a defect relating to an emissions related part.

75.     As explained above, all of the Class Vehicles are equipped with an OBDII onboard diagnostic system. The system uses sensors to gather data which is evaluated using OBDII fault code logic. If the OBDII logic determines that the data is outside of an acceptable range, a fault code is triggered, identifying a defect which increases regulated emissions. When FCA seeks certification of vehicles for

distribution in California, FCA is required, pursuant to 13 CCR 1968.2, to provide CARB with all of FCA's OBDII fault codes and the corresponding logic. Accordingly, when a part that is, or should be, covered under the California Emissions Warranty fails, triggering an OBDII fault code, it fails to perform as described in the vehicle's application for certification. Upon information and belief, these fault codes are submitted to CARB by FCA as "OBD2 Summary Tables". FCA submitted OBD2 Summary Tables or similar documents to CARB for every Class Vehicle and for every model year that the vehicles were certified for sale in California and that are at issue in this case.

76.    The OBD2 Summary Tables identify the Components/Systems monitored by OBDII, the acceptable ranges relating to the data gathered, the corresponding emission fault codes and that the MIL will be triggered when a defect is identified. The purpose of the OBDII system, as confirmed in the CCR, is specifically to monitor emissions-related components. This is why FCA is required to develop a compliant OBDII system which identifies emissions related defects, triggering a fault code and a MIL. The fault codes are used to assist technicians in repairing the vehicles, whereas the MIL is used to alert the driver of a defect. This means that every defect that triggers the emissions fault codes identified by FCA in the OBD2 Summary Tables and the MIL is, by definition, an emissions-related defect. The OBD2 Summary Tables, among other documents, identify the parts that have not already been identified as emissions-related parts by FCA in its warranty books but which, when defective, can or do trigger an emissions fault code and result in illumination of the MIL.

77.    Therefore, FCA is required to cover under the California Emissions Warranty any defect that triggers a fault code identified by FCA in its OBD2 Summary Tables submitted to CARB or that should properly be identified on the OBD2 Summary Tables, because such a defect affects regulated emissions.

78.    A defect in the Valve Train System that triggers emissions fault codes in the OBDII system and identified on the OBD2 Summary Tables will also cause the MIL to illuminate.

79.    Furthermore, defects in the Valve Train System will trigger multiple codes and will illuminate the check engine light.

80.    The foregoing framework and analysis addresses and precludes any potential "slippery slope" argument or concern that every vehicle part could potentially be "emissions-related." This litigation is not dependent on the assertion that "emissions-related parts" are defined as every part in the OBDII system. Rather, this litigation asserts that there should be California Emissions Warranty coverage, at the very least, for the parts, components, or systems whose defects trigger fault codes identified on the OBD2 Summary Tables and cause the MIL to be illuminated. This includes the Valve Train Systems installed on Class Vehicles. This is because said parts undeniably are "emissions-related" and fail in a manner that increases regulated emissions.

81.    FCA knows which fault codes these are because FCA is required to provide to CARB all the fault codes that trigger a MIL and the specific emissions-related conditions that trigger the fault codes as set forth in the OBD2 Summary Tables. Further, as confirmed in the CARB Declaration, emissions-related parts include any components that "can" or are required to illuminate the MIL in the event of a malfunction, even if the primary function of the component is not emissions control.

**"Appendix B" Parts**

82.    Similar to 13 CCR section 2035, 13 CCR Section 2601(i) states that an "'Emissions-related part' means any vehicle part which affects any regulated emissions from a vehicle that is subject to California or federal emissions standards and includes, but is not limited to, those parts specified in the 'Emissions-Related Parts List,' adopted by the State Board on November 4,

1  1977, as last amended June 1, 1990."

2    83.    Similarly, 13 CCR Section 1900(b)(3) states that "'Emissions-related

3  part' means any automotive part, which affects any regulated emissions from a

4  motor vehicle which is subject to California or federal emission standards. This

5  includes, at a minimum, those parts specified in the 'Emissions-Related Parts

6  List,' adopted by the State Board on November 4, 1977, as last amended June 1,

7  1990."

8    84.    The "Emissions-Related Parts List" is contained at 13 CCR Appendix

9  B which states that "The following list of components are examples of emission

10  related parts as defined in Section 1900(b)(3), Chapter 3, Title 13, California Code

11  of Regulations." Emphasis added. Therefore, FCA is required to cover as

12  "emissions-related" parts under the California Emissions Warranty (in addition to

13  the MultiAir Actuator), any vehicle part specifically identified on Appendix B.  As

14  confirmed in the CARB Declaration, in Appendix B, and in the Regulations,

15  "emissions-related parts" are not limited to the emissions control system only.

16    85.    Appendix B lists "Valve Trains", as well as each of the component

17  parts that make up the Valve Train System, as defined herein, as emissions related

18  parts.

19  **THE VALVE TRAIN SYSTEM IS A HIGH-PRICED WARRANTED PART**

20    86.    As part of the certification process for a vehicle, the manufacturer

21  determines which parts it considers to be "emissions parts" and submits a list of

22  those parts to CARB. Section 2037(c). At the same time, the manufacturer also

23  identifies the parts from the emissions parts list that the manufacturer has

24  determined, based on the cost calculation set forth in the CCR, exceeds the cost

25  limit and therefore are "high-priced" parts entitled to extended 7- year/70,000-

26  mile coverage.

27    87.    California Code of Regulations Section 2037(c)(1) states that in

28  calculating whether an individual replacement cost at the time of certification

exceeds the cost limit, "the replacement cost shall be the retail cost to a vehicle owner and include the cost of the part, labor, and standard diagnosis." Similarly, Section 2037(c)(2) states that "the replacement cost shall be the retail cost to a vehicle owner and include the cost of the part, labor, and standard diagnosis."

88.    On July 9, 2014, CARB published Manufacturer's Advisory Correspondence (MAC) 2014-01 ("MAC 2014"). The subject of MAC 2014 was entitled "Cost Limit For High-Priced Warranted Parts For 2015 Model-Year (MY) Passenger Cars (PCs), Light-Duty Trucks (LDTs), Medium-Duty Vehicles (MDVs) And Engines Used In These Vehicles (MDEs), And Off-Road Large Spark-Ignition Engines (LSIEs), and Alternative Fuel Retrofit Systems Certified During Calendar Year (CY) 2014 And CY 2015 Installed In On-Road PCs, LDTs, MDVs And Heavy-Duty Vehicles."

89.    Relevant here is that MAC 2014 "identifies the cost limit for high-priced warranted parts of MY2015 [passenger cars]." Because Class Vehicles are passenger cars, MAC 2014 establishes that the cost limit for high-priced warranted parts for the Subject Vehicle is $590.00.

90.    Pursuant to 13 CCR §2037(c) or §2435(b), as applicable, the cost limit for high-priced warranted parts for model year 2015 passenger cars is calculated using the annual average nationwide urban consumer price index (CPI) for 2013—the calendar year two years prior to the model-year for which the cost limit is being calculated. This CPI is published by the U.S. Bureau of Labor Statistics. When rounded to the nearest ten dollars, the model year 2015 cost limit is $590.00, as calculated below:

$$\text{MY2015 Cost Limit} = \$300 \times (\text{calendar 2013 CPI/baseline CPI})$$
$$= \$300 \times (232.0/118.3)$$
$$= \$590.00$$

91.    The $590.00 cost limit accounts for the total cost to diagnose and replace a warranted part. When the cost to diagnose and replace a warranted part

1  exceeds $590.00, then the warranted part's replacement, by operation of law, must

2  be provided warranty coverage for 7-years or 70,000-miles—whichever occurs

3  first.

4      92.    Further, under a section entitled "High-Priced Warranted Parts Cost

5  Documentation in the Applications for Certification" the MAC makes explicit that

6  "[m]anufacturers must submit in their applications for certification the

7  documentation used to identify the high-priced warranted parts in accordance with

8  13 CCR §2037(c)(3), §2435(b)…[T]he documentation shall include all emission-

9  related parts costing more than $490…(i.e., calculated cost limit minus $100) to

10 replace…This documentation shall substantiate that the list includes all potential

11 high-priced parts. The documentation shall include the estimated retail parts costs,

12 labor rates in dollars per hour, and the labor hours necessary to replace the parts

13 including standard diagnosis. If the labor hours being charged for customer-pay

14 repairs are different from those specified by the manufacturer for warranty repairs,

15 the manufacturer shall substantiate the labor hours specified. All applications and

16 required documentation (i.e., high-priced warranted parts list, potential high-

17 priced parts, and cost calculations) must be submitted using the California Air

18 Resources Board's (CARB) Document Management System."

19     93.    On information and belief, FCA has never identified the Valve Train

20 System in Class Vehicles as emissions-related parts for which it does a high-

21 priced cost analysis. Regardless, the Valve Train Systems in Class Vehicles are

22 inarguably high-priced parts, because the replacement cost of the Valve Train

23 System exceeds one thousand dollars, and has exceeded one thousand dollars for

24 the entirety of the time period relevant to this case. The high-cost limit has never

25 equaled or exceeded $1,000, and thus, the Valve Train System has always

26 exceeded the high-cost limit for all Class Vehicles in all model years.

27     94.    Thus, by failing to provide a 7-years or 70,000-miles warranty for the

28 Valve Train System in Class Vehicles, FCA violated the UCL.

## CLASS ACTION ALLEGATIONS

95.    Plaintiff re-alleges and incorporates by reference each allegation set forth above.

96.    Plaintiff brings this action on her own behalf, as well as on behalf of all Class members similarly situated, pursuant to Federal Rules of Civil Procedure Rules 23(a), (b)(1), (2) and/or (3) and/or (c)(4).

97.    Plaintiff reserves the right to redefine the Class and Subclasses and to add subclasses as appropriate based on further investigation, discovery, and specific theories of liability.

98.    FCA's California Emission Warranty applies to vehicles purchased and registered in States which, in the year the vehicle was distributed, had adopted the California Emissions Warranty, i.e., "Reg. 177 States" or "Section 177 States".

99.    Defendant's emissions warranty representations arise out of California law that Defendant must apply outside of California to the vehicles in the States listed. Accordingly, Defendant's conduct was specifically intended to have effects outside of California and was specifically intended to apply to vehicles and members of the Classes in those States that Defendant chose to include by the express terms of the California Emissions Warranty.

100.    Under these unique circumstances, California has a specific interest in regulating conduct outside of California that specifically invokes California emissions requirements and California emissions regulations and has an interest in preventing illegal practices that involve breach of California Emissions Warranty law that Defendant has chosen to invoke outside of California in the States covered by the Reg. 177 Class and Subclass. As Defendant seeks to apply the California Emission System Warranty to members of the Classes and vehicles in the listed States outside of California, members of the Classes in those States likewise should be included in a claim that seeks to vindicate their rights under

1  that same warranty in California and should have the ability to have their rights

2  under that warranty asserted in California and pursuant to California law.

3      101.   FCA's own express application of the California Emissions Warranty

4  constitutes a sufficient connection between California and out-of-state potential

5  Class members. Further, FCA's misconduct, namely, FCA's failure to identify all

6  emissions-related, high-priced warranted parts to CARB, a California regulator,

7  occurred in California, and even out-of-state purchasers were harmed by FCA's

8  conduct that occurred in California. FCA failed to disclose, in its submissions to

9  CARB, the parts that are properly covered by the California Emissions Warranty,

10 including, but not limited to, the Valve Train System.

11     102.   FCA is solely responsible for selecting and identifying to CARB all

12 of the parts that should be classified as emissions warranted parts, and high-priced

13 warranted parts, and FCA failed to include the Valve Train System and other

14 components. Californians and out-of-state potential Class members in the

15 additional States covered by the California Emissions Warranty suffered an

16 identical harm – they were forced to pay the costs of Valve Train System

17 diagnosis, repair, or replacement, which should have been covered under the

18 California Emissions Warranty, and were provided with warranties which were

19 less valuable than the warranties they were legally entitled to at the time they

20 purchased or leased their Class Vehicle. Under these unique circumstances,

21 California has the greater interest in applying California's consumer laws to

22 enforce compliance with the California Emissions Warranty than the other States

23 have in using their consumer laws to enforce the same Regulation. California has a

24 specific interest in regulating conduct outside of California that invoke California

25 emissions requirements and regulations, and California has an interest in

26 preventing illegal practices that involve breach of California emissions law that

27 Defendant has chosen to invoke outside of California in the specific States

28 covered. California also has a supreme interest in applying its own consumer

CLASS ACTION COMPLAINT

protection laws in ensuring that the California Emissions Warranty is properly interpreted and applied wherever FCA has chosen to invoke it.

103.   Under the facts of this case, the law of California should be applied because California's interest would be impaired if its consumer laws to enforce the California Emissions Warranty were subordinated to consumer laws of the other States. Other jurisdictions' interests in applying their own consumer protection laws to their own residents do not strongly outweigh the interest California has in applying its consumer protection laws to enforce the California Emission Warranty with respect to the specific potential out-of-state members of the Classes identified herein. Therefore, the Classes alleged herein include persons who purchased or leased Class Vehicles that are registered in States other than California.

104.   There is sufficient similarity among all the Class Vehicles and FCA's conduct as defined herein in that, among other things, all of the vehicles in the proposed Classes are subject to the same California Emissions Warranty and the same requirements that FCA report all emissions-related defects to CARB pursuant to the CCR. FCA has acted in a uniform manner with respect to all Class Vehicles by failing to properly cover Valve Train Systems in the Class Vehicles as required under the California Emissions Warranty and as described herein.

105.   Accordingly, Plaintiff's proposed Class and Subclasses consist of and are defined as follows:

California Class and Subclass:

> All persons in the State of California who have been owners or lessees of Class Vehicles and whose Valve Train Systems are not covered for 7-years or 70,000-miles (the "California Class").

> All persons in the State of California who have been owners or lessees of Class Vehicles and who have paid for repairs and parts pertaining to defective Valve Train Systems which occurred prior to 7-years or 70,000-miles

(the "California Out-of-Pocket Subclass").

Reg. 177 Class and Subclass:

> All persons who have been owners or lessees of Class Vehicles in a State which, in the year their vehicle was distributed, had adopted the California Emissions Warranty (i.e., "Reg. 177 States" or "Section 177 States) and whose Valve Train Systems are not covered for 7-years or 70,000-miles (the "Reg. 177 Class").

> All persons who have been owners or lessees of Class Vehicles in a State which, in the year their vehicle was distributed, had adopted the California Emissions Warranty (i.e., "Reg. 177 States" or "Section 177 States) and who have paid for repairs and parts pertaining to defective Valve Train Systems which occurred prior to 7-years or 70,000-miles (the "Reg. 177 Out-of-Pocket Subclass").

> Excluded from the Classes and Subclasses are Defendant, and its subsidiaries and affiliates; its current and former officers, directors, and employees (and members of their immediate families); and the legal representatives, heirs, successors or assigns of any of the foregoing. Also excluded are any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

106. Plaintiff's primary goal on behalf of the Classes is to obtain injunctive relief requiring FCA to comply with the California Emissions Warranty and declaratory relief with respect to the proper interpretation of the California Emissions Warranty and FCA's obligations pursuant to the CCRs and the California Emissions Warranty. Plaintiff's claim for monetary relief is secondary to her claim for injunctive or declaratory relief. Even in the absence of possible monetary recovery, Plaintiff would bring this action to obtain the injunctive and declaratory relief sought. Any monetary relief that would flow to the members of the Classes would be ancillary to the injunctive or declaratory relief obtained.

107. On behalf of the members of the Classes, Plaintiff seeks declaratory judgment/relief pursuant to 28 U.S.C. section 2201 et seq as to, *inter alia*, (1) that

the Valve Train System in the Class Vehicles is an 'emissions-related part" and high-priced" warranty part; (2) that FCA has used, and continues to use, the wrong or incorrect standards for identifying "emission-related" parts and "high-priced warranty parts" under the California Emissions Warranty; (3) that FCA failed and is failing to properly identify and warrant under the California Emissions Warranty all of the parts, components or systems in addition to the Valve Train System, that should have been properly covered for emissions-related defects as identified, *inter alia*, per the fault codes on the Class Vehicles OBD2 Summaries described herein, per Appendix B to the CARB regulations and/or as high-priced warranty parts; and/or, (4) that Plaintiff and members of the Classes are entitled to warranty coverage under California Emissions Warranty for all FCA vehicle parts not properly identified as warranted parts under the California Emissions Warranty as described or defined herein.

108.    On behalf of the members of the Classes, Plaintiff seeks reimbursement or restitution for the out of pocket expenses, including diagnostic fees for amounts wrongfully paid by Plaintiff and members of the Classes relating to repairs that should have been covered by the FCA's California Emissions Warranty during the Class periods. Plaintiff's claim for restitution is distinct from her claim for damages. The damages claim seeks, inter alia, the diminished value of a California Emissions Warranty that does not cover all parts that should properly be included in the California Emissions Warranty. Moreover, Plaintiff does not seek the same sum in restitution as she seeks in damages, and the two remedies do not compensate for the same harm. The restitutionary remedy, which seeks out of pocket reimbursement, will not compensate Plaintiff and members of the Classes for damages incurred due to the Class Vehicles having a California Emissions Warranty that has less value because the Warranty does not properly cover all parts that should properly be covered under the California Emissions Warranty and will not compensate for the excess amounts and profits that FCA

1    pocketed due to its misconduct and in being able to avoid paying warranty claims

2    that should have been covered under the California Emissions Warranty.

3          109.    Further, the harm suffered by Plaintiff and members of the Classes

4    and perpetrated by FCA, is not adequately compensable with damages. The entire

5    purpose of the California Emissions Warranty is to protect the environment. The

6    California Emissions Warranty was enacted by the State of California to restrict

7    harmful greenhouse gas from gasoline and hybrid gasoline engines. The

8    fundamental purpose of the emissions requirements is to reduce emissions, limit

9    fuel consumption and increase fuel efficiency, by forcing manufacturers to repair

10    and/or replace failed emissions-related vehicle components under warranty,

11    thereby decreasing greenhouse gas emissions, including carbon dioxide emissions.

12          110.    Indeed, motor vehicle use is the single greatest source of U.S. air

13    pollution and is the cause of more air pollution than any other human activity.

14    (Cars, Fuels, and Clean Air: A Review of Title II of the Clean Air Act

15    Amendments of 1990 (1991) 21 Envtl. L. 1947, 1949). Many of these pollutants

16    consist of hydrocarbons and nitrous oxides which react to form photochemical

17    oxidants in the atmosphere. The most notorious of these photochemical oxidants is

18    ozone – the primary component of urban smog. (California Air Resources Bd.,

19    Staff Report: Proposed Regulations for Low-Emission Vehicles and Clean Fuels

20    (Aug. 13, 1990) at p. 3). Cars also produce nearly two-thirds of all carbon dioxide

21    emissions. Carbon dioxide content in the atmosphere is closely linked to global

22    temperature because the temperature of the Earth is primarily determined by the

23    balance between its absorption of energy from the Sun, and the reflection of a

24    portion of this energy back into space. Carbon dioxide – a greenhouse gas – traps

25    the energy and heat which would have otherwise escaped back into space, and re-

26    emits it, causing the warming of our atmosphere. This process is known as the

27    "greenhouse effect."

28    ///

111.   Therefore, the State of California highly regulates emissions from gasoline and hybrid gasoline engines, specifically greenhouse gas emissions. In September 1990, pursuant to its broad authority to regulate and reduce environmentally harmful vehicle emissions under Health and Safety Code §§ 43013(a) and 43205, CARB submitted, and the Legislature adopted, California Code of Regulation §§ 2035, et seq., which requires all manufacturers to provide a statutorily compliant emissions warranty to all vehicles distributed and registered in California.

112.   In September 2004, CARB approved the "Pavley" Greenhouse Gas Regulations to control greenhouse gas emissions from new LEV II vehicles beginning with the 2009 model year. These Greenhouse Gas Regulations added four greenhouse gas air contaminants to the vehicular criteria and toxic air contaminant emissions that California was already carbon dioxide ($CO_2$), methane ($CH_4$), nitrous oxide ($N_2O$), and hydrofluorocarbons (air conditioner refrigerants). The State and federal government have specifically focused on regulating greenhouse gas emissions, including carbon dioxide emissions. If a gas vehicle has a defect which increases fuel consumption, that defect increases carbon dioxide emissions.

113.   Notwithstanding State and federal regulations designed to protect our air, monitoring shows that over 90 percent of Californians breathe unhealthy levels of one or more air pollutants during some part of the year. Despite CARB's best efforts, in 2020, "there were 157 bad air days for ozone pollution—the invisible, lung-searing gas in smog—across the vast, coast-to-mountains basin spanning Los Angeles, Orange, Riverside and San Bernardino counties. That's the most days above the federal health standard since 1997." (Barboza, Tony (Dec. 6, 2020) L.A. Began 2020 With A Clean-Air Streak but Ended with Its Worst Smog in Decades, Los Angeles Times [https://www.latimes.com/42alifornia/story/2020-12-06/2020-laair-quality-southern-california-pollution-analysis].) One of the

1    reasons that our environment is in such a state of crisis is that corporations are not

2    following our very thoroughly formulated rules.

3        114.   Accordingly, damages are inadequate to compensate for the

4    foregoing harms caused by FCA's violation, and continuing violation, of the

5    California Emissions Warranty. Money damages will not fix the harm caused by

6    Defendant's violation of emissions laws, which requires equitable relief.

7        115.   Further, FCA and car manufacturers should not be able to shirk their

8    legal responsibilities simply by paying damages. Simply paying off consumers

9    undermines the entire purpose of the California Emissions Warranty and will

10    leave FCA in the position of being able to continue to violate the law and increase

11    harmful vehicle emissions by just paying damages. Ironically, this result will leave

12    Plaintiff and members of the Classes in an even worse position than by simply

13    receiving monetary compensation alone.

14        116.   Moreover, payment of damages does not ensure that the emissions

15    parts will actually be repaired. That result will only be ensured by forcing FCA to

16    cover the repair under the California Emissions Warranty as required.

17        117.   Further, equitable relief is required because damages alone will not

18    be sufficient for Class members to identify all parts whose defects result in fault

19    codes identified in the OBD2 Summaries being triggered. Only FCA has done the

20    analysis and knows the fault code logic that would allow for identification of all

21    required fault codes to CARB and all parts that give rise to those fault codes so

22    that those parts can be identified and properly covered under the California

23    Emissions Warranty. In effect, Plaintiff's request for equitable relief is the only

24    way to get FCA to do what it is required to do.

25        118.   There are common questions of law and fact as to members of the

26    Class and Subclasses that predominate over questions affecting only individual

27    members, including, but not limited to:

28    ///

CLASS ACTION COMPLAINT

(a)    Whether FCA has failed and is failing to acknowledge that the Valve Train System installed in the Class Vehicles should be covered under the 7-year, 70,000-mile California Emissions Warranty, pursuant to California law;

(b)    Whether FCA's failure to comply with the California Emissions Warranty by failing to provide a 7-year, 70,000-mile California Emissions Warranty for the Valve Train Systems installed in the Class Vehicles damaged Class members when they purchased or leased a Class Vehicle with a less valuable warranty than they were entitled to;

(c)    Whether FCA engaged in and is engaging in a systematic business practice of failing to identify that the Valve Train System installed in the Class Vehicles should be covered under the 7-year, 70,000-mile California Emissions Warranty, pursuant to California law;

(d)    Whether FCA's conduct is an unlawful and unfair business practice in violation of California Business & Professions Code section 17200, *et seq*.;

(e)    Whether Plaintiff and Class members are entitled to declaratory and injunctive relief regarding FCA's failure to identify that the Valve Train System installed in the Class Vehicles should be covered under the 7-year, 70,000-mile California Emissions Warranty, pursuant to California law;

(f)    The appropriate remedy for FCA's violations of California law.

119.    There is a well-defined community of interest in the litigation and the Class members are readily ascertainable:

(a)    <u>Numerosity</u>: The Class members are so numerous that joinder of all Class members would be unfeasible and impractical. The membership of the entire Class is unknown to Plaintiff at this time;

CLASS ACTION COMPLAINT

however, the Class is estimated to be greater than one hundred (100) individuals and the identity of such membership is readily ascertainable by inspection of Defendant's records.

(b)   Typicality: Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class member with whom she has a well-defined community of interest, and Plaintiff's claims (or defenses, if any) are typical of all Class members as demonstrated herein.

(c)   Adequacy: Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class member with whom she has a well-defined community of interest and typicality of claims, as demonstrated herein. Plaintiff acknowledges that she has an obligation to make known to the Court any relationship, conflicts or differences with any Class member. Plaintiff's attorneys, the proposed Class counsel, are versed in the rules governing class action discovery, certification, and settlement. Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be necessarily expended for the prosecution of this action for the substantial benefit of each Class member.

(d)   Superiority: The nature of this action makes the use of class action adjudication superior to other methods. A class action will achieve economies of time, effort, and expense as compared with separate lawsuits, and will avoid inconsistent outcomes because the same issues can be adjudicated in the same manner and at the same time for the entire class.

## TOLLING OF THE STATUTE OF LIMITATIONS

120.   FCA engaged in misleading and dishonest conduct relating to its failure to identify all of the parts, including the Valve Train System, that should be

covered pursuant to the California Code of Regulations regarding the California Emissions Warranty. Despite acting diligently, Plaintiff and Class members lacked the resources and had no realistic ability to identify the specific parts that should have been covered. Plaintiff and Class members cannot be reasonably expected on their own to learn or discover what parts should be covered under the California Emissions Warranty. Therefore, the delayed discovery rule is applicable to the claims asserted by Plaintiff and Class members, and the statute of limitations for bringing the claims set forth herein should be tolled.

121.   FCA has actual and constructive knowledge that it is violating California law by failing to identify all of the parts that should be covered under the California Emissions Warranty. FCA has concealed from Plaintiff and Class members that FCA is violating California law as set forth herein. Any applicable statute of limitation is tolled by FCA's wrongful conduct set forth herein, and FCA is estopped from relying on any statute of limitation because of its conduct.

## FIRST CAUSE OF ACTION

### Violation of California Unfair Competition Law

### (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

### By Plaintiff, the California Class, and the Reg. 177 Class Against Defendant

122.   Plaintiff re-alleges and incorporates by reference each allegation set forth above.

123.   California Business and Professions Code section 17200, et seq. (the "UCL") prohibits "any unlawful, unfair or fraudulent business act or practice." FCA has committed acts of unfair competition proscribed by the UCL, including the acts and practices alleged herein.

124.   The UCL imposes strict liability. Plaintiff need not prove that FCA intentionally or negligently engaged in unlawful or unfair business practices – only that such practices occurred.

125.   FCA is a "person" as defined by Business & Professions Code §

17201.

126.   As a direct and proximate result of FCA's acts and practices in violation of the UCL, Plaintiff and members of the Classes have suffered injury in fact and lost money or property as set forth above and will continue to do so.

127.   **Unlawful Prong**.   A business practice is "unlawful" under the UCL if it is forbidden by law or regulations, including standard of professional conduct. The violation of any law or regulation may serve as the predicate for a violation of the "unlawful" prong of the UCL.

128.   FCA failed to comply with the California Emissions Warranty requirements pursuant to the CCR by failing to provide 7-year and 70,000-mile warranty coverage for the Valve Train Systems installed in the Class Vehicles where coverage should be provided pursuant to the CCR. The California Emissions Warranty applies to all Class Vehicles. 13 CCR 2037(a). Pursuant thereto, manufacturers shall warrant that vehicles conform with the California Air Resources Board regulations, and are free from defects which cause the failure of a warranted part to perform as described in the application for certification, including defects which would cause the vehicle's on-board diagnostic malfunction indicator to illuminate, for 3 years or 50,000 miles. 13 CCR 2037(b)(1)- (2). The vehicle manufacturer is FCA, which is the manufacturer granted certification for the Class Vehicles. 13 CCR 2035(c)(5). The parts at issue are all warranted parts. The warranty period shall be 7-years and 70,000-miles for high-priced emissions parts. 13 CCR 2037(b)(3). High-priced emissions parts are those parts which, when taking into consideration the cost to diagnose, replace and pay for the failed part, exceed the cost limit defined in 13 CCR 2037(c)(3). The California Air Resources Board published memos which calculated the cost limit for the Class period. Although the Valve Train Systems installed in the Class Vehicles exceeded the cost limit for the correlating years and should have received California Emissions Warranty coverage, FCA failed to provide 7-year and

1  70,000-mile warranty coverage for said parts. The failure has resulted in damage

2  to Plaintiff and members of the Classes.

3        129.   FCA did not designate the parts at issue as "emissions-related" and/or

4  high-priced warranted parts that should be covered by the 7-year and 70,000-mile

5  California High-Cost Emissions-Related Parts Warranty. Thereby, FCA also was

6  able to avoid identifying the Valve Train Systems installed in the Class Vehicles

7  as defined herein where coverage should be provided pursuant to the CCR as

8  being high-priced warranted parts in the warranty books for the Class vehicles,

9  which purport to identify all parts covered under the high-priced California

10  Emissions Warranty for 7 years and 70,000 miles. Thus, FCA's violation of

11  Section 2037(c)(1)(B) directly affected communications with consumers. By

12  violating Section 2037(c)(1)(B), FCA was able to avoid disclosing in the warranty

13  books that the Valve Train System should have been included as a high-priced

14  warranted part.

15        130.   FCA's acts of unlawful competition as set forth above have caused

16  members of the Classes to suffer damage, present a continuing threat and will

17  persist and continue to do so unless and until this Court issues appropriate

18  injunctive relief. Plaintiff also seeks attorneys' fees and costs pursuant to, inter

19  alia, C.C.P. Section 1021.5.

20        131.   **Unfair Prong**.  FCA's conduct violates the unfair prong of the UCL.

21        132.   An act or practice is unfair if the consumer injury is substantial, is not

22  outweighed by any countervailing benefits to consumers or to competition and is

23  not an injury the consumers themselves could reasonably have avoided. An act or

24  practice also is unfair if it offends an established public policy or is immoral,

25  unethical, oppressive, unscrupulous or substantially injurious to consumers. An act

26  or practice also is unfair if Plaintiff's claims are "tethered" to specific

27  constitutional, statutory or regulatory provisions. FCA's conduct violates all of

28  these definitions.

133.   As alleged above, FCA engages and has engaged in a systematic business practice of intentionally failing to identify in the Class Vehicles' warranty books at the time of distribution, and in resources provided to its dealerships, numerous parts that FCA is obligated to identify as high-priced warranted parts and emission related parts by operation of law, including specifically the Valve Train Systems installed in the Class Vehicles where coverage should be provided pursuant to the CCR. FCA does this in an effort to reduce the amount of money that FCA spends on warranty-related repairs knowing that it would be very difficult if not impossible for most consumers to discover this unlawful conduct. If FCA complied with California law and properly identified the Valve Train System as a high-priced warranted part, then FCA dealerships would properly provide warranty coverage for them. Further, FCA's conduct is unfair because it intentionally refuses to provide warranty coverage for the Valve Train Systems installed in the Class Vehicles as defined herein for the sole purpose of wrongfully limiting its warranty claims, with no regard for the fact that the public is being forced to pay for repairs which should be covered under the 7-year and 70,000-mile California Emissions Warranty. Plaintiff and members of the Classes have suffered injury in fact and lost money or property as a result of FCA's unfair business acts and practices as set forth in detail.

134.   FCA's failure to properly identify the Valve Train Systems installed in the Class Vehicles where coverage should be provided pursuant to the CCR, is a uniform, systematic, and intentional business practice on the part of FCA to minimize the amount of money that FCA has to pay out in warranty claims. This conduct violates California law.

135.   As a direct and proximate result of FCA's acts and practices in violation of the UCL, Plaintiff and members of the Classes have paid out of pocket to repair or replace the Valve Train Systems installed in the Class Vehicles where coverage should be provided pursuant to the CCR and/or other high-priced

warranted parts and emissions related parts as defined herein that should have been covered by FCA under the 7-year and 70,000-mile California Emissions Warranty. As a result, consumers were denied warranty coverage, which is unfair.

136.   FCA's conduct does not benefit consumers or competition. Plaintiff and members of the Classes could not reasonably avoid the injury each of them suffered or will suffer, which injury is substantial. FCA's conduct only benefits FCA, by FCA wrongfully avoiding having to pay warranty claims which should be covered by the California Emissions Warranty.

137.   The gravity of the consequences of FCA's conduct as described above outweighs the justification, motive or reason therefor, is immoral, unethical and unscrupulous. FCA's conduct also offends established public policy that is tethered to legislatively declared policies as set forth in the laws detailed above, including California laws and regulations regarding the California Emissions Warranty, or is substantially injurious to the public, for the reasons set forth above.

138.   To the extent that any definition of "unfair" requires a balancing test or weighing various factors, such an inquiry is fact intensive and requires a full factual record as to FCA's justification and motives for its conduct, and as to the impact of FCA's conduct on Plaintiff and members of the Classes.

139.   FCA's acts of unfair competition as set forth above present a continuing threat and will persist and continue to do so unless and until this Court issues appropriate injunctive relief. Plaintiff also seeks attorneys' fees and costs pursuant to, inter alia, C.C.P. § 1021.5.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for relief and judgment against FCA as follows:

(a) An order certifying the proposed Classes, designating Plaintiff as named representative of the Classes, and designating the Plaintiff's Counsel as Class

Counsel;

(b) A declaration that FCA is financially responsible for notifying all members of the Classes about the wrongful conduct set forth herein; that FCA's conduct as alleged herein violates the California Emissions Warranty including, without limitation, that FCA has used, and continues to use, the wrong or incorrect standards for identifying "emission-related" parts and "high-priced warranty parts" under the California Emissions Warranty; that FCA failed and is failing to properly identify and warrant under the California Emissions Warranty the Valve Train Systems in Class Vehicles; and/or that Plaintiff and the members of the Classes are entitled to warranty coverage under California Emissions Warranty for Valve Train Systems installed in Class Vehicles under the California Emissions Warranty described or defined herein;

(c) An order requiring FCA to (1) review its warranty books for all Class Vehicles and properly identify and warrant all "emissions-related parts" and (2) for all such parts, and for all parts that FCA already identified in its warranty books or that FCA previously identified and submitted to CARB as "emissions parts" or "emissions-related parts," recalculate whether those parts, in fact, should properly be characterized as "high priced parts" when the correct, rate is used; (3) on a going forward basis, use the proper standard for determining whether a part is "emissions-related" under the California Emissions Warranty; (4) otherwise accurately and comprehensively apply the CCR in order to properly identify all parts as defined and limited herein that should be covered under the California Emissions Warranty; and (5) reimburse both Plaintiff and members of the Classes for the money wrongfully paid by Plaintiff and members of the Classes relating to repairs which should have been covered by FCA under the California Emissions Warranty;

(d) An award to Plaintiff and members of the Classes of any repair costs they are owed, reimbursement for all out-of-pocket expenses, including diagnostic costs,

CLASS ACTION COMPLAINT

that Class Members paid for repairs that should properly have been covered by

FCA under the California Emissions Warranty and other amounts to which they

may be legally entitled;

(e) An award to Plaintiff and members of the Classes of damages in an amount to

be proven at trial;

(f) An award of attorneys' fees and costs as allowed by law and/or pursuant to

California Code of Civil Procedure § 1021.5;

(g) An award of pre-judgment and post-judgment interest;

(h) Leave to amend the Complaint to conform to the evidence produced at trial;

and,

(i) Other relief as may be appropriate under the circumstances.


Dated: August 5, 2022                    Respectfully submitted,

**POMERANTZ LLP**
**THE LAW OFFICE OF ROBERT STARR**
**FRONTIER LAW CENTER**

By:_____ /s/ Adam Rose_____
Jordan L. Lurie
Ari Y. Basser
Robert L. Starr
Manny Starr
*Attorneys for Plaintiff*


DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial pursuant to Fed. R. Civ. Pro 38.


Date: August 5, 2022                    FRONTIER LAW CENTER

/s/ Adam Rose_____
Attorney for Plaintiff
Juvenal Rodriguez

CLASS ACTION COMPLAINT