UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTAL REGUEIRO, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FCA US LLC,<br><br>Defendant. | Case No. 2:22-cv-05521-SPG-MAR<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT [ECF NO. 57]** |

Before the Court is the Motion for Preliminary Approval of Class Action Settlement (ECF No. 57 ("Motion")) filed by Plaintiff Kristal Regueiro ("Plaintiff"). The Court has read and considered the Motion and concluded that it is suitable for decision without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. Having considered the parties' submissions, the relevant law, and the record in this case, the Court DENIES the Motion.

I.   **BACKGROUND**

   A.   **Factual Background**

The following allegations are taken from Plaintiff's First Amended Complaint ("FAC"). (ECF No. 17 ("FAC")). Defendant FCA US LLC ("Defendant") is a car manufacturer that has sold vehicles in the State of California. (*Id.* ¶ 41). Plaintiff is the

owner of a used 2015 Jeep Wrangler manufactured by Defendant and originally registered in California. (*Id.* ¶ 43).

On November 17, 2021, with the vehicle at 54,041 miles, Plaintiff presented the vehicle for repairs to Champion Chrysler Jeep Dodge Ram, a repair facility in Downey, California, authorized by Defendant. (*Id.* ¶ 44). A diagnostic scan of the vehicle found that the vehicle was experiencing a Cylinder 3 misfire, which causes an increase in regulated emissions. (*Id.* ¶ 46). Plaintiff paid a $210.00 diagnostic fee out of pocket but declined to have the repair performed. (*Id.* ¶ 48). The vehicle was later diagnosed with a defective Valve Train System, a system that includes intake valves, exhaust valves, valve guides, valve springs, valve seats, and camshafts. (*Id.* ¶¶ 7, 50).

Plaintiff alleges that Defendant FCA US LLC ("Defendant") unlawfully failed to cover the cost of repair, as required by the California Emissions Warranty. (*Id.* ¶¶ 1, 49). Under regulations promulgated by the California Air Resources Board ("CARB"), manufacturers are required to provide warranty coverage of 3 years or 50,000 miles for defects relating to "warranted parts," including certain "emissions-related parts." (*Id.* ¶¶ 20, 23). For emissions-related parts that are determined to be "high-priced," the regulations require that the warranty coverage be extended to 7 years or 70,000 miles. (*Id.* ¶ 26). Plaintiff alleges that the Valve Train System and its component parts should have been identified as high-priced emissions-related parts, subject to the 7-year, 70,000 mile California Emissions Warranty. (*Id.* ¶ 51).

Plaintiff initiated this action on behalf of a purported class of persons in California who have been owners or lessees of vehicles distributed by Defendant under its brand and whose Valve Train Systems were not covered by the California Emissions Warranty. (*Id.* ¶ 127). Plaintiff also seeks to represent a subclass of California vehicle owners who have paid for repairs and parts pertaining to defective Valve Train Systems that should have been covered by the California Emissions Warranty. (*Id.*). Finally, Plaintiff seeks to represent a similar class and subclass of vehicle owners and lessees in "Regulation 177 States" that have adopted California's vehicle emissions criteria pollutant regulations under

Section 177 of the Clean Air Act. (*Id.* ¶¶ 119, 127). Plaintiff brought a single claim under California's Unfair Competition Law ("UCL"), seeking, among other relief, restitution for out-of-pocket expenses and injunctive relief requiring Defendant to cover all high-priced emissions-related parts under the California Emissions Warranty. (*Id.* at 42-43).

Plaintiff initiated this action on August 5, 2022. (ECF No. 1). Pursuant to a stipulation, Plaintiff filed the FAC on December 14, 2022. (FAC). On May 4, 2023, the Court granted, in part, and denied, in part, Defendant's motion to dismiss the FAC. (ECF No. 33). As relevant here, the Court dismissed the claims on behalf of the Regulation 177 class and subclass, concluding that Plaintiff had not shown that Defendant's California-based conduct had any nexus to the out-of-state plaintiff's alleged injuries and that Plaintiff had not established personal jurisdiction over Defendant as to the out-of-state class members' claims. (*Id.* at 20-24). Defendant then answered the FAC, and the parties proceeded to discovery. (ECF No. 34). On March 20, 2025, the parties filed a notice of settlement. (ECF No. 51). Plaintiff filed the instant Motion on July 21, 2025, (Mot.), and Defendant filed a response in support of the Motion on July 28, 2025, (ECF No. 59).

**B.  The Settlement Agreement**

The parties participated in mediation with JAMS mediator Bradley Winters on November 18, 2024, and reached an agreement as to the principal terms of settlement. (ECF No. 57-2 ("Lurie Declaration") ¶¶ 8, 9). The parties separately negotiated attorney's fees, expenses, and service awards. (*Id.* ¶ 9). Plaintiff represents that the settlement agreement was the product of non-collusive, adversarial negotiations during and after the mediation. (*Id.* ¶ 10). Plaintiff has provided a copy of the Settlement Agreement, (ECF No. 57-3 ("Settlement Agreement")), which contains the following key provisions.

1.  <u>Class Definition</u>

The Settlement Agreement defines the Settlement Class as follows: "All individuals who, as confirmed by FCA US's records, purchased one or more of the following vehicles equipped with a 3.6L engine in the states of California, Connecticut, Delaware, Maine, Maryland, Oregon, Pennsylvania, Rhode Island, Vermont, or Washington ("Reg. 177

States"): model-year 2015-2020 Ram 1500; model-year 2015-2019 Dodge Journey; model-year 2015-2020 Jeep Wrangler; model-year 2015-2020 Dodge Challenger; model-year 2015-2020 Dodge Charger; model-year 2015-2020 Chrysler 300; model-year 2015-2020 Chrysler Town & Country or Dodge Grand Caravan; model-year 2015-2017 Chrysler 200; model-year 2015-2020 Ram Promaster; model-year 2015-2020 Dodge Durango; or model-year 2015-2020 Grand Cherokee." (Settlement Agreement at 4). The vehicles listed above are defined as the "Class Vehicles." (*Id.* at 5).

        2.      Settlement Consideration

The Settlement Agreement provides two forms of consideration to the Class Members. First, Defendant has agreed to extend its warranty obligations as to the Class Vehicles to "cover the costs of all parts and labor needed to replace a failed Valve Rocker Arm, Valve Stem Oil Seal, or Valve Tappet component for the earlier of 7 years from the Class Vehicle's in-service date or 70,000 miles driven." (*Id.* at 8). This warranty extension is not personal to any owner or lessee and survives the sale of the vehicle to subsequent purchasers. (*Id.* at 9).

Second, Defendant has agreed to reimburse any Class Member who previously paid for a repair relating to a failed Valve Rocker Arm, Valve Stem Oil Seal, or Valve Tappet component that is entitled to warranty coverage under the Settlement Agreement. (*Id.*). Any such Class Member must submit a claim to the Settlement Administrator for reimbursement based on proof of a paid repair. (*Id.*). Such claims must be filed within 45 days of the dissemination of notice to the Class. (*Id.*). The Settlement Agreement provides that the settlement and claims process will be administered by Kroll Settlement Administration (the "Settlement Administrator"). (*Id.* at 8).

        3.      Attorney's Fees, Costs, and Service Awards

In addition to the consideration discussed above, Defendant has agreed to pay, subject to Court approval, "an award of reasonable attorneys' fees and expenses, inclusive of costs, up to, but not to exceed, the total combined sum of $1,005,000." (*Id.* at 15). This payment will be in addition to the consideration discussed above and will not reduce or

otherwise affect the benefits to the Class Members. (*Id.*). Additionally, Defendant has agreed not to oppose Plaintiff's request that Defendant pay a Service Award of $7,500 to Plaintiff. (*Id.*).

        4.    <u>Release</u>

The Settlement Agreement provides that, upon final approval of the Settlement, Plaintiff and the Class Members will irrevocably release any past, present, and future "Released Claims" against "Releasees." (*Id.*). The Settlement Agreement defines Released Claims to mean:

> Plaintiff's and Class Members' claims under Section 17200 of California's Business & Professions Code (the "UCL"), as well as any and all claims, causes of action, demands, debts, suits, liabilities, obligations, claims for monetary reimbursement, actions, rights of action, remedies of any kind and/or causes of action of every nature and description, whether known or unknown, asserted or unasserted, foreseen or unforeseen, regardless of any legal theory, existing now or arising in the future, by Plaintiffs and any and all Class Members relating to the facts, acts, events, transactions, occurrences, courses of conduct, representations, omissions, circumstances, or other matters based on malfunction of the Valve Rocker Arm, Valve Stem Oil Seal, or Valve Tappet components in the Class Vehicles as alleged in the Action.

(*Id.* at 7). The Released Claims do not include "claims for death, personal injuries, damage to tangible property other than a Class Vehicle, [] subrogation," or currently pending automobile lemon law claims. (*Id.*). Releasees is defined to include the entities that marketed the Class Vehicles; entities that designed, developed, or disseminated advertisements for the Class Vehicles; Defendant and its parents, subsidiaries, and affiliates, as well as the officers, directors, and employees thereof; and the predecessors, successors, and assigns of each of these individuals. (*Id.* at 7-8).

        5.    <u>Class Notice</u>

Finally, the Settlement Agreement provides that, following preliminary approval, the Settlement Administrator will send notice via email or direct mail to all identifiable Class Members. (*Id.* at 13). The Settlement Administrator will set up and maintain a

settlement website where Class Members can access a more detailed notice, along with the Settlement Agreement, the FAC, and additional information. (*Id.*). If notice is returned with a forwarding address, the Settlement Administrator will re-mail the notice to the new address. (*Id.* at 14). If no address is indicated, the Settlement Administrator will perform an advanced address search and re-mail the notice to the best-known address resulting from the search. (*Id.*).

Following notice, Class Members may submit objections to the Settlement Agreement by providing written notice to the Court within 45 days after the notice date. (*Id.* at 21). Any Class Member may also make a request for exclusion from the Class by submitting an opt out or exclusion form following final approval. (*Id.* at 20).

## II. LEGAL STANDARD

Parties seeking class certification for settlement purposes must satisfy the requirements of Federal Rule of Civil Procedure 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In considering such a request, the court must give the Rule 23 certification factors "undiluted, even heightened, attention in the settlement context." *Id*. Once a class is certified, Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before approving a class action settlement under Rule 23, a district court must conclude that the settlement is "fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). In the Ninth Circuit, there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (quoting *Syncor ERISA Litig.*, 516 F.3d at 1101).

Court approval of a class action settlement requires a two-step process—a preliminary approval followed by a later final approval. *See Tijero v. Aaron Bros., Inc.*, No. C 10–01089 SBA, 2013 WL 60464, at *6 (N.D. Cal. Jan. 2, 2013) ("The decision of

whether to approve a proposed class action settlement entails a two-step process."); *West v. Circle K Stores, Inc.*, No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006) ("[A]pproval of a class action settlement takes place in two stages."). At the preliminary approval stage, the court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *See* Manual for Complex Litigation (Fourth) § 21.632 (2004). However, the "settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (emphasis in original).

## III.  DISCUSSION

The Court cannot grant preliminary approval of the Settlement Agreement because it attempts to settle claims that are not before the Court. As mentioned above, the Court previously granted Defendant's motion to dismiss the FAC insofar as it "requests monetary damages and asserts claims on behalf of the Reg. 177 Class and Subclass." (ECF No. 33 at 24). The Court did so for two reasons: (1) because the FAC failed to allege facts that would allow the Court to apply the UCL extraterritorially, and (2) because the Court lacked personal jurisdiction over Defendant as to the out-of-state Class Members' claims because the FAC failed to allege any "connection between the forum and the specific claims at issue." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 265 (2017). Plaintiff did not attempt to amend the FAC, and Defendant subsequently answered the FAC. Thus, the FAC, as modified by the Court's order, remains the operative complaint in this case, and does not include any live claims for a purported out-of-state Class. Nevertheless, the Settlement Agreement attempts to settle the claims of out-of-state Class Members and to bind those individuals to a release of any similar claims.

While Defendant might have the ability to waive the personal jurisdiction issues identified in the Court's prior order, the parties cannot contract around the extraterritoriality concerns. Given the Court's prior ruling on extraterritoriality, certifying this class would violate the due process rights of the absent out-of-state Class Members. As the Supreme

Court has explained, "for a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-13 (1981). Such contacts must be shown as to "the claims asserted *by each member of the plaintiff class*." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821 (1985) (emphasis added). "Such a showing is necessary to ensure that application of California law is constitutional." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589-90 (9th Cir. 2012); *see also Wash. Mut. Bank, FA v. Superior Ct.*, 24 Cal. 4th 906, 919 (2001) ("[A] forum state may apply its own substantive law to the claims of a nationwide class without violating the federal due process clause or full faith and credit clause if the state has a significant contact or significant aggregation of contacts to the claims of each class member such that application of the forum law is not arbitrary or unfair." (internal quotation marks and citation omitted)). As the Court previously found, the FAC "does not provide factual allegations demonstrating that Defendant's California-based conduct has any nexus to the out-of-state plaintiff[s'] alleged injuries." (ECF No. 33 at 21). Given the Court's ruling, the Court cannot now, consistent with due process, bind out-of-state individuals to a settlement under California law and require any out-of-state Class Member who does not opt out to waive any similar claims under the laws of their state.

      Additionally, approving such a settlement would exceed the Court's subject matter jurisdiction because there is no live case or controversy involving the out-of-state class before the Court. As discussed, all such claims were previously dismissed, and Plaintiff has not amended the FAC to reassert these claims. Under Article III of the Constitution, federal courts "possess no authority to issue rulings beyond the cases and controversies before them." *Torres v. Madrid*, 592 U.S. 306, 329 (2021) (Gorsuch, J., dissenting); *see also SEC v. Med. Comm. for Hum. Rts.*, 404 U.S. 403, 407 (1972) ("It is well settled that federal courts may act only in the context of a justiciable case or controversy." (citation and brackets omitted)). And as the Ninth Circuit has explained in the context of Rule 41

dismissals, once claims have been dismissed, "the district court loses jurisdiction over the dismissed claims and may not address the merits of such claims or issue further orders pertaining to them." *Duke Energy Trading & Mktg., LLC v. Davis*, 267 F.3d 1042, 1049 (9th Cir. 2001). The same is true in this context because granting the proposed Settlement Agreement would require the Court to decide a dispute and bind parties that are not before the Court.

Even beyond these threshold problems, the Court could not grant preliminary approval of the Settlement Agreement under Rule 23. First, because the consumer protection statutes of other states "differ significantly from California's UCL," Plaintiff's UCL claims are not typical of those of out-of-state class members. *Darisse v. Nest Labs, Inc.*, No. 5:14-cv-01363-BLF, 2016 WL 4385849, at *9-10 (N.D. Cal. Aug. 15, 2016) (identifying differences between the UCL and other state consumer protection statutes on the viability of class actions, statutes of limitations, reliance, actionable conduct, and available remedies); *see also Lewis v. First Am. Title Ins. Co.*, 265 F.R.D. 536, 556 (D. Idaho 2010) (concluding that "materially different legal standards of liability among the five jurisdictions . . . make Plaintiff's claims atypical of those same claims of class members in other states"). Second, because Plaintiff has not shown that California law can be applied to out-of-state Class Members consistent with due process, common questions of law and fact do not predominate. *See Mazza*, 666 F.3d at 594 (concluding under choice of law analysis that "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place" and vacating class certification because common questions did not predominate). Finally, the Settlement Agreement is not fair, adequate, and reasonable as to out-of-state Class Members who have had no specific representation in this action and who will be bound by a settlement under the law of a state to which they have no connection.

Given these deficiencies, the Court cannot grant the Motion. And because the Settlement Agreement makes no distinction between in-state and out-of-state Class

Members, the Court cannot simply excise those provisions relating to out-of-state Class Members.  Accordingly, the Court DENIES the Motion for Preliminary Approval.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES the Motion.  If the parties continue to seek Court approval of a class settlement, the parties must renegotiate the Settlement Agreement to apply only to the claims of California Class Members that are still before the Court.  The Court ORDERS the parties to meet-and-confer and to file a joint status update with the Court within twenty-one (21) days of the issuance of this Order, notifying the Court of the parties' intentions and proposing a schedule.

**IT IS SO ORDERED.**

DATED:  September 8, 2025

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE